**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Anthony Hazelton, | No. CV-17-02650-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is claimant Mark Anthony Hazelton's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits. (Doc. 10). For the following reasons, the Court affirms the denial of benefits.

**BACKGROUND**

Mr. Hazelton filed a claim for disability benefits with the Social Security Administration on September 26, 2012, alleging that he suffers from degenerative disc disease of the lumbar spine and various other medical conditions. (Tr. 30). Mr. Hazelton's claim was denied, and he eventually appeared before Administrative Law Judge Earl Cates on June 7, 2016. (Tr. 13). In evaluating whether Mr. Hazelton was disabled, the ALJ undertook the five-step sequential evaluation for determining

disability.[1] (Tr. 14–16).

At step one, the ALJ found that Mr. Hazelton had not engaged in substantial gainful activity since the alleged onset date. (Tr. 16). At step two, the ALJ determined that Mr. Hazelton suffers from degenerative disc disease of the lumbar spine with low back pain. (Tr. 16–17). At step three, the ALJ decided that Mr. Hazelton's impairments did not meet or equal the criteria of a listed impairment in the regulations. (Tr. 17). At step four, the ALJ determined Mr. Hazelton's residual functional capacity and found that he could perform medium work with various exceptions, such as being able to sit, stand, or walk for four hours at one time and up to six hours in an eight hour work day. (Tr. 17–20). As part of this analysis, the ALJ considered the opinion testimony of treating physician Dr. Mark Whitaker, examining physician Robert Gordon, and various other consultative examining physicians and reviewing physicians. (Tr. 19–20). The ALJ then determined that Mr. Hazelton is capable of performing his past relevant work as a protective signal installer, change person for slot machines, and security consultant. (Tr. 20–21). Accordingly, the ALJ determined that Mr. Hazelton does not qualify for disability benefits. (Tr. 21).

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

The Social Security Administration Appeals Council denied Mr. Hazelton's request for review. (Tr. 1–3). He filed this complaint on August 7, 2017 to challenge the denial of benefits. (Doc. 1).

**DISCUSSION**

**I.   Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). A reviewing court may draw specific and legitimate inferences from an ALJ's decision, but it cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

**II.  Analysis**

Mr. Hazelton argues that the ALJ failed to support his finding of nondisability with substantial evidence; gave less-than-deserved weight to treating physician Dr. Mark Whitaker; gave more-than-deserved weight to examining physician Dr. Robert Gordon; and failed to appropriately consider Mr. Hazelton's daily activities.

**A.   Whether the ALJ supported his decision with substantial evidence**

An ALJ must support a denial of disability benefits with substantial evidence.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted). Therefore, courts cannot affirm an ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998). Although an ALJ "need not discuss all evidence presented," the ALJ may not ignore substantial, contradictory evidence and must "explain why significant probative evidence has been rejected." *Carter v. Colvin*, 651 Fed.Appx. 721, 723 (9th Cir. 2016) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)); s*ee also Penny v. Sullivan*, 2 F.3d 953, 957 (9th Cir. 1993) ("our review of the record as a whole indicates that the ALJ ignored substantial evidence on the overall record indicating that [claimant] was disabled within the meaning of the Act");

For objective medical evidence, the record includes x-rays of the lumbar spine taken in December 2012 showing "marked degenerative disc disease," (Tr. 373), and a January 2014 MRI showing "severe disc space narrowing" and "severe left neuroforaminal stenosis." (Tr. 398). The ALJ briefly mentioned these tests and then concluded without discussion that these two reports supported a medium exertional limitation with frequent climbing and crawling. (Tr. 18). However, neither Dr. Gordon nor Dr. Boyack had these reports when examining Mr. Hazelton, (Tr. 377, 411, 419), and the medical interpretations of those two reports are sparse. Dr. Schultz stated that the MRI showed "considerable" change at L4-S1 and L5-S1 and served as a basis for Mr. Hazelton's pain complaints. (Tr. 409). Dr. Whitaker referenced the MRI when he opined that the changes at L4-L5 and L5-S1 reasonably explained the claimant's pain, which, according to the pre-printed form he filled out, was disabling on bad days. (Tr. 402).

Next, the ALJ stated that Mr. Hazelton's physical examinations showed normal muscle strength, sensation, range of motion, and gait. (Tr. 18). A review of the notes

- 4 -

shows that they both support and contradict that claim. The ALJ referenced Dr. Whitaker's notes that Mr. Hazelton had normal strength and gait, but it also reported that he had decreased sensation in the leg. (Tr. 394, 517). The ALJ referenced treatment notes at the Pain Center of Arizona that Mr. Hazelton had normal gait, but also indicated that he had "joint back pain muscle weakness." (Tr. 436). The ALJ cited a medical note from an emergency room visit for abdominal pain that Mr. Hazelton had normal strength and normal gait. (Tr. 356). Separate from the notes cited by the ALJ, Dr. Boyack noted that Mr. Hazelton has normal muscle strength, but also has restrictions in reaching above ninety degrees, and a "slightly antalgic" gait but overall "good balance and capacity to walk." (Tr. 376). Dr. Boyack also noted that Mr. Hazelton "was able to sit comfortably, get on and off the exam table on his own without difficulty." (Tr. 375). Dr. Schultz noted an antalgic gait and diminished pin sensation on his foot. (Tr. 410). Dr. Richard Gordon noted that Mr. Hazelton was uncomfortable sitting in the chair for the duration of the examination, but could walk without difficulty and was "observed standing from a sitting position and sitting from a standing position as well as . . . mounting and dismounting the examination table without apparent restrictions or limitations in thoracic or lumbar spine range of motion." (Tr. 413, 415). Dr. Gordon also performed a mobility examination and stated that Mr. Hazelton expressed pain with a straight leg-lift greater than thirty degrees. (Tr. 415). In short, multiple doctors examined Mr. Hazelton and provided varying reports concerning his gait, strength, mobility, and range of motion.

The x-rays, MRI, and all of the doctors' notes support the ALJ's finding that Mr. Hazelton suffers from lower back pain, but none of it conclusively indicates that Mr. Hazelton suffers from significantly limiting or disabling pain. In consideration of the whole record, a reasonable person could have reached the same conclusion as the ALJ that Mr. Hazelton suffers from degenerative disc disease and is still capable of medium level work. Mr. Hazelton points out that the evidence is mixed, but courts must defer to the ALJ's conclusion when the evidence is subject to more than one rational interpretation. *Batson*, 359 F.3d at 1198. The Court finds that the ALJ did not err in its

review of the record.

### B. Whether the ALJ properly weighed opinion testimony

In general, the opinions of treating physicians are given more weight than examining non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *See* 20 C.F.R. § 404.1527(c)(1)–(2). In the case of a treating doctor, an ALJ considers the length of the treatment relationship, and the nature and extent of the treatment relationship. *Id*. at § 404.1527(c)(2)(i)–(ii). For all medical providers, an ALJ considers factors such as whether the provider supports their opinion with evidence and whether the opinion is consistent with the medical record. *Id*. at § 404.1527(c)(3)–(6). Where substantial evidence contradicts a treating doctor's opinion, the doctor's opinion is not entitled to controlling weight. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). When a treating doctor's opinion is not contradicted by another doctor, it may be rejected only by clear and convincing reasons. *Id.* If a treating doctor's opinion is contradicted by another doctor, it may be rejected for "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id*. (citations omitted).

#### 1. Dr. Whitaker

The ALJ discredited the opinion of treating physician Mark Whitaker and assigned it little weight. (Tr. 19). On January 7, 2014, Dr. Whitaker opined that Mr. Hazelton was totally unable to work or participate in work related activities. (Tr. 400). On January 28, 2014, Dr. Whitaker opined that Mr. Hazelton could perform less than sedentary work, which was defined as some part-time work or work with significant accommodations. (Tr. 401). Dr. Whitaker further opined that Mr. Hazelton could sit, stand, or walk for only thirty minutes at a time; and could sit for only three hours, stand for two hours, and walk for one hour over the course of an eight hour day, and would need to lay down for the rest of the day. (Tr. 404). Dr. Whitaker also opined to various restrictions in lifting and mobility. (Tr. 402–08).

Dr. Robert Gordon's opinion contradicted Dr. Whitaker's. Dr. Gordon examined

Mr. Hazelton and opined that he could sit, stand, or walk for four hours at a time and up to six hours total in a normal eight-hour work day. (Tr. 417). Dr. Boyack examined Mr. Hazelton and also contradicted Dr. Whitaker's opinion. Dr. Boyack opined that Mr. Hazelton could stand and/or walk for six to eight hours and sit for six to eight hours in a normal eight-hour work day. (Tr. 378). The ALJ must therefore give "specific and legitimate reasons supported by substantial evidence in the record" to discredit Dr. Whitaker. *Orn v. Astrue*, 495 F.3d at 632. The ALJ provided two reasons for discrediting this testimony. (Tr. 19). First, the ALJ stated that the medical record showing normal strength, range of motion, and gait contradicted the extent of Dr. Whitaker's proposed limitations. Second, the ALJ stated that Mr. Hazelton controlled the pain with conservative treatment.

An ALJ may discredit a medical opinion if it is inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In Mr. Hazelton's case, the ALJ again stated that the medical record showed "normal muscle strength, sensation, range of motion, and gait" and cited to the same four parts of the record to support this conclusion as he did previously when considering the objective medical evidence. (Tr. 19). As previously noted, the reports in those citations support the conclusion that Mr. Hazelton suffers from some pain but is capable of performing medium work. *See supra* at II.A. And, Dr. Whitaker himself noted that Mr. Hazelton had normal strength and gait. (Tr. 394, 517). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that an ALJ may discount a treating physician's opinion when it contradicts his treatment notes).

Next, the ALJ discredited Dr. Whitaker's opinion because Mr. Hazelton controlled the pain with conservative treatment. Although the bulk of conservative treatment case law concerns claimant credibility, the Ninth Circuit has discussed conservative treatment in the weight to be given to a treating physician's report. *See Hanes v. Colvin*, 651 Fed.Appx. 703, 705 (9th Cir. 2016) (holding that an "ALJ reasonably relied on conservative treatment" consisting of "minimal medication, limited injections, physical

therapy, and gentle exercise" to "conclude that the assessments of [two treating physicians] were inconsistent with the objective evidence in the record"); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that because a "conservative course of treatment" is "not the sort of . . . recommendation[ ] one would expect to accompany a finding that [the claimant] was totally disabled," the ALJ had "provided adequate reasons for not fully crediting [the treating physician's] statements"). The ALJ properly discredited the extent of Dr. Whitaker's opined limitations by referencing the conservative treatment. In a May 2016 visit to the Pain Center of Arizona, the treatment notes stated that Mr. Hazelton had taken two medications for irritable bowel syndrome and 200 mg Advil. (Tr. 436). The note then stated, "The patient reports adequate pain relief with current medications. This course of treatment provides for adequate function, and continues to maintain their current quality of life." (Tr. 438). The ALJ properly discredited Dr. Whitaker's testimony because evidence in the record adequately shows that Mr. Hazelton controlled his symptoms with relatively conservative treatment.

### 2. Dr. Gordon

Mr. Hazelton argues that the ALJ erred by assigning too much weight to Dr. Robert Gordon. (Doc. 10 at 11–12). Although an ALJ generally gives more weight to the opinions of treating physicians than opinions of examining non-treating physicians, an ALJ may assign more weight to one physician over another when the ALJ concludes that the treating physician does not deserve controlling weight. 20 C.F.R. § 404.1527(c). Some of the relevant factors include whether the opinion is consistent with the record as a whole, is supported by objective evidence, or the opining physician has a specialization in the pertinent field. 20 C.F.R. § 404.1527(c)(3)–(5).

As described above, the ALJ adequately discredited the treating physician's opinion and was not required to give it controlling weight. In weighing the opinion testimony, the ALJ gave Dr. Gordon's opinion "significant weight . . . based on the expertise in occupational medicine . . . ." (Tr. 20). The ALJ also noted that medical records and conservative treatment supported Dr. Gordon's opinion. (Tr. 20). Thus, the

ALJ gave legitimate reasons for giving significant weight to Dr. Gordon's opinion.

### C. Whether the ALJ appropriately considered daily activities

To assess the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ must first determine whether there is "'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Then, if there is no evidence of malingering, the ALJ must give "'specific, clear and convincing reasons'" in order to reject the claimant's testimony about the severity of the symptoms. *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).

As one of the reasons to discredit Mr. Hazelton's subjective testimony, the ALJ claimed that the "activities of daily living illustrates a person more able bodied than alleged." (Tr. 19). "An ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). However, a claimant need not "vegetate in a dark room" in order to be eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). "[C]laimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Courts and ALJs should be cognizant of the "critical differences between activities of daily living and activities in a full-time job," such as "flexibility in scheduling," ability "to get help from other persons," and not being "held to a minimum standard of performance." *Id.*

Mr. Hazelton completed a questionnaire of exertional daily activities. (Tr. 296–299). In a typical day, he eats, takes care of personal hygiene, reads, watches T.V., and lays down to nap if needed. (Tr. 296). He claims that he does some household chores, such as making meals and dusting, but he needs to stop and rest every twenty to thirty minutes. (Tr. 297). He drives a car when needed, but he needs to stop and stretch if he is in the car longer than one hour. (Tr. 297). He goes grocery shopping with his mother

1 twice per month. (Tr. 297). Separate from the questionnaire, Mr. Hazelton reported most of these activities to Dr. Rabara, and he also noted that he regularly attends church and helps his mother. (Tr. 426). None of these activities are inconsistent with Mr. Hazelton's claims that he qualifies for disability benefits. These activities are rather limited, and the standard of performance and flexibility are different from those that would be required in a full-time job. Further, the ALJ stated that Mr. Hazelton's hobbies of watching television, reading the bible, and using the computer are inconsistent with limitations as alleged, (Tr. 19), but these are all hobbies that conform with expectations of someone who can perform only sedentary work. The ALJ erred in this part of the analysis.

### 1. Harmful Error

If an ALJ errs, the decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

The ALJ provided other valid reasons to discredit Mr. Hazelton's credibility. The ALJ stated that the "objective medical evidence, [and] the effectiveness of treatment" also "illustrate greater functional abilities than alleged." (Tr. 19). As previously discussed *supra* at II.A–B, the ALJ adequately discussed the objective medical evidence and effectiveness of conservative treatment when considering Mr. Hazelton's residual functioning capacity. The ALJ gave two specific, clear, and convincing reasons to discredit Mr. Hazelton's subjective testimony. Therefore, the ALJ's error concerning Mr. Hazelton's daily activities is not prejudicial.

### CONCLUSION

As described above, the ALJ properly reviewed Mr. Hazelton's claim for social security benefits. The Court affirms the decision.

/ / /

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court is directed to enter judgment accordingly.

Dated this 21st day of August, 2018.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge